```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 13, 2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                   :

JOSEPH IOCOVELLO,              :

                             :

                Plaintiff,    :       14 Civ. 4949 (KPF)

                           :

             v.           :      OPINION AND ORDER

                           :

THE CITY OF NEW YORK, a municipal :
entity, and POLICE OFFICER ERICA    :
FRANCIS,                    :

                           :

               Defendants. :

------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

On April 8, 2013, two New York City Department of Sanitation ("DSNY") employees, Plaintiff Joseph Iocovello and Walter King, got into a fight on the job. Police arrived on the scene and separately interviewed Iocovello and King. And although Iocovello insisted that King was the lone aggressor, New York City Police Department ("NYPD") Officer Erica Francis arrested both men.

On July 1, 2014, Iocovello sued the City of New York (the "City") and Officer Francis (together, "Defendants"). He brings three claims. First, Iocovello argues that Officer Francis falsely arrested him, and he seeks recovery under both 42 U.S.C. § 1983 and New York state law. Second, Iocovello argues that the City negligently hired, retained, and supervised King — alleged to have episodes of violence in his past — in violation of New York state law.

Pending before the Court is Defendants' motion for summary judgment. Defendants argue that Iocovello's false-arrest claims are untenable, because

Officer Francis had probable cause to arrest him.  And even if Officer Francis lacked probable cause, Defendants insist, she is nonetheless entitled to qualified immunity.  As for Iocovello's negligence claim, Defendants argue that the City had no notice of King's allegedly violent propensities.

Defendants have the better arguments.  The Court agrees with Defendants that Officer Francis is entitled to qualified immunity and that Iocovello's false-arrest claims must be dismissed.  That conclusion eliminates Iocovello's lone federal claim in this suit, and the Court declines to exercise supplemental jurisdiction over his state-law negligence claim.  Thus, for the reasons set forth in the remainder of this Opinion, Defendants' motion for summary judgment is granted as to Iocovello's false-arrest claims, and Iocovello's negligence claim is dismissed for lack of jurisdiction.

## BACKGROUND[1]

### A.    Factual Background

There is a gulf between the parties' accounts of what they each consider to be the operative facts of this case.  They agree that Iocovello and King had a

---

[1]    This Opinion draws on facts from Iocovello's Complaint ("Compl." (Dkt. #2)) and the parties' submissions in connection with the instant motion.  Defendants' submissions include the Declaration of Peter J. Fogarty ("Fogarty Decl." (Dkt. #53)); an affidavit from Walter King ("King Aff." (Dkt. #53-10)); Defendants' Local Rule 56.1 Statement ("Def. 56.1" (Dkt. #54)); a reply declaration from Peter J. Fogarty ("Second Fogarty Decl." (Dkt. #59)); affidavits from three DSNY sanitation workers who witnessed the fight between Iocovello and King ("Fiore Aff." (Dkt. #59-2); "Gerri Aff." (Dkt. #59-2); "Alvarado Aff." (Dkt. #59-2)); and Defendants' objections to Iocovello's Local Rule 56.1 Statement ("Def. 56.1 Objs." (Dkt. #60)).  Iocovello's filings include the Declaration of Christopher H. Fitzgerald ("Fitzgerald Decl." (Dkt. #56)), handwritten statements from four DSNY employees who witnessed the altercation between King and Iocovello ("Statements" (Dkt. #56-6)), and Iocovello's Local Rule 56.1 Statement ("Pl. 56.1" (Dkt. #57)).  For ease of reference, the Court refers to Defendants' opening brief as "Def. Br.," Iocovello's response as "Pl. Opp.," and Defendants' reply as "Def. Reply."

physical altercation, that Officer Francis separately interviewed both men, and that she then arrested them both.  But the parties part ways over what information Officer Francis learned prior to her decision to arrest Iocovello and King, and whether that information supplied Officer Francis with probable cause to arrest Iocovello.  And although the Court ultimately concludes that these factual disputes are immaterial, they merit examination here because they bear on the Court's resolution of Defendants' qualified-immunity defense.

The Court begins with the undisputed facts.  Iocovello was a DSNY Supervisor; King worked under Iocovello's charge.  (Compl. ¶¶ 20-21).  Both men worked at DSNY Bronx Garage 9 ("Bronx Garage 9"), located at 850 Zerega Avenue in the Bronx, New York.  (Def. 56.1 ¶ 1).

On April 8, 2013, Iocovello and King got into an argument at Bronx Garage 9.  (Def. 56.1 ¶ 1).  When that verbal altercation turned physical, DSNY Supervisor Jaime Alvarado called 911.  (*Id.* at ¶¶ 1-2; Pl. 56.1 ¶ 14).  Sprint telephone records of the "radio run" issued after that call indicate that Alvarado reported that a sanitation worker had assaulted his supervisor.  (Pl. 56.1 ¶ 1; Fitzgerald Decl. Ex. A).  At least four DSNY employees witnessed the incident between Iocovello and King:  Alvarado, Robert Gazzola, James Gerri, and Gerard Fiore.  (Pl. 56.1 ¶ 5).

NYPD officers, including Officer Francis, arrived on the scene and interviewed Iocovello and King in separate rooms.  (Def. 56.1 ¶¶ 3-5).  Officer Francis spoke with Iocovello in a Bronx Garage 9 office; about eight to ten other people (presumably DSNY employees) sat in on the interview.  (Pl. 56.1 ¶ 4).

3

Officer Francis observed a scrape on Iocovello's leg and red marks on his face. (Pl. 56.1 ¶ 2; Def. 56.1 Objs. ¶ 2).  Iocovello told Officer Francis that King had assaulted him.  (Def. 56.1 ¶ 7).

King's account of the incident was more equivocal.[2]  King told Officer Francis that he and Iocovello had gotten into a fight, during which both men "grabbed each other."  (Def. 56.1 ¶¶ 8-9).  And although Officer Francis did not see any signs of physical injury on King, King complained that his back hurt as a result of his altercation with Iocovello.  (*Id.* at ¶ 10; Pl. 56.1 ¶ 3).  Iocovello did not overhear any part of Officer Francis's interview of King.  (Def. 56.1 ¶ 6).

Here is where the parties' accounts diverge.  The four witnesses to the fight between Iocovello and King (Alvarado, Gazzola, Gerri, and Fiore) drafted handwritten statements describing that incident.  (*See* Statements).  All four of those statements convey a similar narrative — King attacked Iocovello in a pique of anger.  (*Id.*).  But the statements also raise a question that the parties dispute:  Did Officer Francis read the statements before she arrested Iocovello and King?

---

[2]     On February 12, 2016, King executed an affidavit (the "King Affidavit") in which he averred:  "To the best of my recollection, I did not tell the police officers that Mr. Iocovello intentionally hit me or attacked me."  (King Aff. ¶ 6).  Iocovello, however, does not rely on the King Affidavit in opposing Defendants' motion for summary judgment. Indeed, Iocovello does not even mention the substance of this affidavit in his briefing. Rather, *Defendants* included this affidavit in their opening summary judgment papers in an apparent attempt to discredit it.  (*Id.*; *see* Def. Br. 7-8).  The Court agrees with Defendants that the timing of the King Affidavit is suspect; King signed it just ten days before Iocovello voluntarily dismissed King from this lawsuit.  (Def. Br. 7; *see* Dkt. #46). More importantly, the King Affidavit fails to raise a genuine dispute of material fact as to whether Officer Francis is entitled to qualified immunity.  The Court explores this issue more fully *infra.*

Although all four statements are dated "4-8-13" (Statements), it is unclear if they were drafted before or after Officer Francis arrived at Bronx Garage 9.  Iocovello argues that Gazzola handed all four statements to Officer Francis.  (Pl. 56.1 ¶ 17).  What is more, Iocovello maintains that Gazzola and Alvarado both told Officer Francis that King attacked Iocovello.  (*Id.* at ¶ 16).

Defendants offer a competing sequence of events.  They assert that Fiore, Gerri, and Alvarado "all filled out the[ir] handwritten statements at the behest of the [DSNY] after NYPD officers had left the scene."  (Def. 56.1 Objs. ¶ 17).  Defendants have submitted affidavits from Fiore, Gerri, and Alvarado that purport to corroborate this timeline.  (Gerri Aff.; Fiore Aff.; Alvarado Aff.).  It is true that, in their affidavits, all three men aver that they did not show their handwritten statements to Officer Francis on April 8.  (Fiore Aff. ¶¶ 4, 7; Gerri Aff. ¶¶ 5, 9; Alvarado Aff. ¶¶ 2, 5).  But only Alvarado and Gerri state explicitly that they drafted their affidavits after Officer Francis departed Bronx Garage 9.  (Alvarado Aff. ¶ 4; Gerri Aff. ¶ 8).  And Defendants have not submitted an affidavit from Gazzola — who, by Iocovello's account, gave all four handwritten statements to Officer Francis before she arrested Iocovello.  In any event, Defendants insist that Officer Francis did not see Fiore's, Gerri's, or Alvarado's handwritten statements during her time at Bronx Garage 9.  (Def. 56.1 Objs. ¶ 17).

Officer Francis arrested Iocovello and King.  (Def. 56.1 ¶ 11).  At his arraignment on April 9, 2013, Iocovello was charged with, among other things,

third-degree assault and third-degree menacing.  (Compl. ¶ 40).[3]  The Bronx
County District Attorney's Office dismissed all counts against Iocovello on
October 31, 2013.  (*Id.* at ¶ 43).

## B.    Procedural Background

On July 1, 2014, Iocovello sued Officer Francis, the City, the NYPD, the
DSNY, and King.  (Dkt. #2).  The Complaint brought thirteen claims for relief.
(*Id.*).  At a pretrial conference on November 10, 2015, Iocovello consented to
removing the NYPD and the DSNY as defendants.  (Dkt. #37 at 23).  Iocovello
also agreed to strike several of his causes of action.  (*Id.* at 24-26).  On
February 22, 2016, Iocovello voluntarily dismissed King from his suit.  (Dkt.
#46).

On May 23, 2016, Defendants moved for summary judgment on
Iocovello's three remaining claims:  (i) false arrest under federal and state law
(against Defendants) and (ii) negligent hiring, retention, and/or supervision
under state law (against the City).  (Dkt. #55).  Iocovello responded on June 22,
2016 (Dkt. #58), and Defendants replied on July 6, 2016 (Dkt. #61).

## DISCUSSION

## A.    Applicable Law

Two well-settled legal standards guide the Court's analysis.  First, the
standard of review for a motion for summary judgment.  Second, the standard

---

[3]     In his Complaint, Iocovello alleges that he was arraigned on April 9, 2014.  (Compl.
¶ 40).  The Court assumes that this was a typographical error.

for establishing qualified immunity in a false-arrest case.  The Court addresses each in turn.

### 1.       Standard of Review for Summary Judgment Motions

Federal Rule of Civil Procedure 56 instructs that "[s]ummary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Brown* v. *Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).  A summary-judgment movant's "burden has two distinct components:  [i] an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and [ii] an ultimate burden of persuasion, which always remains on the moving party."  *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 330 (1986).

To satisfy this first component, a movant must "demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.*, 477 U.S. at 323.  "[A] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC* v. *Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  And a dispute is "genuine" if "the evidence would permit a reasonable juror to find for the party opposing the motion."  *Figueroa* v. *Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (quoting *Anderson*, 477 U.S. at 248).

If the movant makes this showing, "[t]he nonmoving party must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Rubens* v. *Mason*,

527 F.3d 252, 254 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56(e)).  The

nonmoving party cannot meet this burden by "rest[ing] upon the mere

allegations or denials of the adverse party's pleading, but … must set forth

specific facts showing that there is a genuine issue for trial." *Parks Real Estate*

*Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir.

2006) (quoting Fed. R. Civ. P. 56(e)).

"A court reviewing a motion for summary judgment must 'construe the

facts in the light most favorable to the non-moving party and must resolve all

ambiguities and draw all reasonable inferences against the movant.'" *Beyer* v.

*Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Dallas Aerospace,*

*Inc.* v. *CIS Air Corp.,* 352 F.3d 775, 780 (2d Cir. 2003)).

### 2. Standard for Establishing Qualified Immunity in False-Arrest Cases

"Qualified immunity shields government officials from civil damages

liability unless the official violated a statutory or constitutional right that was

clearly established at the time of the challenged conduct." *Reichle* v. *Howards*,

132 S. Ct. 2088, 2093 (2012).  "Put simply, qualified immunity protects 'all but

the plainly incompetent or those who knowingly violate the law.'" *Mullenix* v.

*Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Malley* v. *Briggs,* 475 U.S. 335, 341

(1986)).  "In the context of § 1983 actions predicated on allegations of false

arrest, … an arresting officer is entitled to qualified immunity so long as

'arguable probable cause' was present when the arrest was made." *Figueroa*,

825 F.3d at 100 (quoting *Zalaski* v. *City of Hartford*, 723 F.3d 382, 390 (2d Cir.

2013)).  The same is true of false-arrest claims brought under New York state law.  *Jenkins* v. *City of N.Y.*, 478 F.3d 76, 88 (2d Cir. 2007).

Arguable probable cause is an objective standard.  It "exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Garcia* v. *Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Zalaski,* 723 F.3d at 390).  "[W]hether an officer's conduct was objectively reasonable" depends on "the information possessed by the officer at the time of the arrest," not "the subjective intent, motives, or beliefs of the officer."  *Id.* (quoting *Amore* v. *Novarro*, 624 F.3d 522, 536 (2d Cir. 2010)).  "Put another way, an arresting officer will find protection under the defense of qualified immunity unless 'no reasonably competent officer' could have concluded, based on the facts known at the time of arrest, that probable cause existed."  *Figueroa*, 825 F.3d at 100 (citing *Malley*, 475 U.S. at 341).  "Therefore, in situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity."  *Caldarola* v. *Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002).

Determining whether an officer had *arguable* probable cause to effect an arrest requires the Court to consider factors that tend to establish or diminish probable cause.  "Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Figueroa*,

9

825 F.3d at 99 (quoting *Escalera* v. *Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)).

"Probable cause is a 'fluid' standard that 'does not demand hard certainties or

mechanistic inquiries'; nor does it 'demand that an officer's good-faith belief

that a suspect has committed or is committing a crime be correct or more likely

true than false.'" *Id.* (quoting *Zalaski*, 723 F.3d at 389-90).  Rather, "[a] court

deciding whether probable cause existed must 'examine the events leading up

to the arrest, and then decide whether these historical facts, viewed from the

standpoint of an objectively reasonable police officer, amount to probable

cause.'" *Mitchell* v. *City of N.Y.*, 841 F.3d 72, 77 (2d Cir. 2016) (quoting

*Maryland* v. *Pringle*, 540 U.S. 366, 371 (2003)).  These principles make plain

that "[t]he requirement of probable cause does not create a high bar for law

enforcement."  *Sforza* v. *City of N.Y.*, No. 07 Civ. 6122 (DLC), 2009 WL 857496,

at *13 (S.D.N.Y. Mar. 31, 2009).

When an arresting officer raises qualified immunity as a defense to a

false-arrest claim on summary judgment, "summary judgment dismissing [the]

plaintiff's false arrest claim is appropriate if the undisputed facts indicate that

the arresting officer's probable cause determination was objectively

reasonable." *Jenkins*, 478 F.3d at 88.  "If, however, on the undisputed facts

the officer would be unreasonable in concluding probable cause existed, or if

the officer's reasonableness depends on material issues of fact, then summary

judgment is inappropriate[.]"  *Id.*

10

### B.    Analysis

To review, Defendants have moved for summary judgment on Iocovello's false-arrest claims against both Defendants and his negligence claim against the City.  Defendants argue that Officer Francis had probable cause to arrest Iocovello or, at minimum, arguable probable cause sufficient to confer qualified immunity.  Iocovello retorts that based on the evidence Officer Francis gathered during her time at Bronx Garage 9, she should have realized that King attacked Iocovello, and not the other way around.  As for Iocovello's negligence claim, Defendants insist that the City was not on notice that King was prone to violence (if, indeed, he had violent proclivities in the first place), a contention Iocovello disputes.

The Court concludes that Officer Francis is entitled to qualified immunity from Iocovello's false-arrest claims, because she had arguable probable cause to arrest Iocovello.  In light of that conclusion, Iocovello's only remaining claim is his state-law negligence claim against the City — and the Court declines to exercise supplemental jurisdiction over it.  Accordingly, Defendants' motion for summary judgment is granted as to Iocovello's false-arrest claims, and his negligence claim is dismissed without prejudice so that it may be refiled in state court.

### 1.    Officer Francis Is Entitled to Qualified Immunity from Iocovello's False-Arrest Claims

Iocovello argues that Officer Francis violated his rights under New York and federal law because she arrested him without probable cause.  Whether Officer Francis enjoys qualified immunity from a false-arrest claim hinges on

whether she had arguable probable cause to arrest Iocovello.  *Jenkins*, 478 F.3d at 88 ("under both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer[]" had arguable probable cause).  That distills the dispositive merits question the Court must answer here:  Do the undisputed facts of this case establish that Officer Francis's "probable cause determination was objectively reasonable[?]"  *Id.*  Because the Court concludes that the answer is "yes," it must enter summary judgment against Iocovello on his false-arrest claim.

"Allegations of unconstitutional false arrest are analyzed by 'look[ing] to the law of the state in which the arrest occurred" — here, New York.  *Sforza*, 2009 WL 857496, at *13 (quoting *Jaegly* v. *Couch,* 439 F.3d 149, 151 (2d Cir. 2006)); *see also Simpson* v. *City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015) ("A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." (quoting *Jenkins*, 478 F.3d at 84)).  "Under New York law, an action for false arrest requires that the plaintiff show that '[i] the defendant intended to confine him, [ii] the plaintiff was conscious of the confinement, [ii] the plaintiff did not consent to the confinement and [iv] the confinement was not otherwise privileged.'"  *Ackerson* v. *City of White Plains*, 702 F.3d 15, 19 (2d Cir.), *as amended* (Dec. 4, 2012) (citation omitted).  "To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either [i] he had probable cause for the arrest, or [ii] he is protected from liability because he has qualified immunity."  *Simpson*, 793 F.3d at 265.  And

to establish that she had arguable probable cause sufficient to confer qualified immunity, Officer Francis must demonstrate that "either (a) it was objectively reasonable for [her] to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Garcia*, 779 F.3d at 92 (quoting *Zalaski,* 723 F.3d at 390).

Officer Francis has met this standard:  She had arguable probable cause to arrest Iocovello.  Before explaining why, the Court addresses one conspicuous gap in the parties' briefs.  Neither party discloses the offense (or offenses) for which Officer Francis arrested Iocovello.  True, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and … it is not relevant whether probable cause existed with respect to … any charge actually invoked by the arresting officer at the time of arrest." *Jaegly*, 439 F.3d at 154.  Nonetheless, "the elements of the offense[s] for which" Officer Francis arrested Iocovello bear on "the objective reasonableness of [her] belief that probable cause existed." *Dancy* v. *McGinley*, Lead Docket No. 15-140-cv (L), 2016 WL 7118403, at *12 (2d Cir. Dec. 7, 2016) (quoting *Lennon* v. *Miller*, 66 F.3d 416, 424 (2d Cir. 1995)).  Defendants insist that Officer Francis had arguable probable cause to arrest Iocovello.  But that just begs the question:  for what crime?

In his Complaint, however, Iocovello recounts that he was charged with third-degree menacing and third-degree assault.  (Compl. ¶ 40).  And although it is certainly possible that Officer Francis arrested Iocovello on lesser charges,

the Court will proceed on the assumption that Officer Francis arrested Iocovello for one or both of these two crimes.

The elements of those two offenses are as follows.  "A person is guilty of assault in the third degree when:  [i] With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or [ii] He recklessly causes physical injury to another person; or [iii] With criminal negligence, he causes physical injury to another person by means of a deadly weapon or a dangerous instrument."  N.Y. Penal Law. § 120.00.  "A person is guilty of menacing in the third degree when, by physical menace, he or she intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury."  *Id.* § 120.15.  Both crimes refer to "physical injury," which "means impairment of physical condition or substantial pain."  *Id.* § 10.00.  "'[S]ubstantial pain' cannot be defined precisely, but ... it is more than slight or trivial pain and need not ... be severe or intense to be substantial."  *People* v. *Monserrate*, 90 A.D.3d 785, 787 (2d Dep't 2011) (internal quotation marks and citation omitted).

With all of these principles in mind, the undisputed facts of this case establish that Officer Francis's "probable cause determination was objectively reasonable."  *Jenkins*, 478 F.3d at 88.  Consider the facts that Officer Francis knew when she arrested Iocovello and King on April 8, 2013.  Prior to arriving at Bronx Garage 9, she received a "radio run" indicating that a sanitation worker had assaulted his supervisor.  But the information Officer Francis learned during her investigation at Bronx Garage 9 did not clearly establish

14

that that is what happened.  Officer Francis interviewed Iocovello, who told her that King attacked him.  Iocovello had a scrape on his leg and red marks on his face.  Officer Francis also interviewed King, who recounted that he and King had gotten into a fight during which they "grabbed each other."  (Def. 56.1 ¶ 9).  And King added that he was experiencing back pain as a result of his altercation with Iocovello.

The undisputed facts of this case — as they appeared at the time Officer Francis arrested Iocovello and King — established that *two men* had gotten into a fight.  They established that *two men* had grappled with each other.  And they established that *two men* displayed physical injuries as a result of that altercation.  Based on these facts, the Court cannot conclude that "no reasonably competent officer" would have determined that Officer Francis had probable cause to arrest Iocovello for third-degree assault or third-degree menacing.  *Figueroa*, 825 F.3d at 100.  Officer Francis is thus immune from Iocovello's false-arrest claim.

Iocovello tries to counter this conclusion in three ways.  And although his brief elides the distinction between these arguments, to the extent the Court can extricate them, all three fail.

Iocovello first faults Officer Francis for not conducting a more searching investigation.  Officer Francis, Iocovello argues, should have rigorously interrogated King's story of what transpired on April 8.  If she had, Iocovello claims, she would have determined that King's account was false and that Iocovello was the victim of King's attack.  (Pl. Opp. 7).

15

Officer Francis was under no obligation to conduct Iocovello's desired investigation. "Once an officer has probable cause, he or she is neither required nor allowed to continue investigating, sifting and weighing information." *Panetta* v. *Crowley*, 460 F.3d 388, 398 (2d Cir. 2006) (internal quotation marks and citation omitted). And "[i]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, ... unless the circumstances raise doubt as to the person's veracity." *Id.* at 395 (internal quotation marks and citations omitted). Just so here. King told Officer Francis that he and Iocovello fought each other. Iocovello gives no reason for this Court to conclude that Officer Francis should have doubted the veracity of King's statement. And the information King conveyed to Officer Francis constituted sufficient evidence to establish arguable probable cause to arrest Iocovello, because it suggested that Iocovello fought with King and caused him to suffer injury.

Second, Iocovello argues that Officer Francis lacked probable cause to arrest him, because multiple eyewitnesses told Officer Francis that King was the lone aggressor. (Pl. Opp. 8). Even resolving the ambiguities of this case in the light most favorable to Iocovello, *see Beyer*, 524 F.3d at 163, this argument fails. Assuming that (i) Officer Francis read the four handwritten statements from Alvarado, Gazzola, Gerri, and Fiore before she arrested Iocovello, and (ii) Gazzola and Alvardo both told Officer Francis that King attacked Iocovello,

does not change the Court's conclusion that Officer Francis had arguable probable cause.

"The Second Circuit has held consistently that conflicting accounts of a crime do not vitiate the probable cause established by an eyewitness identification or alleged victim of a crime." *Crews* v. *Cty. of Nassau*, 996 F. Supp. 2d 186, 205 (E.D.N.Y. 2014). Again, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti* v. *N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997); *see, e.g.*, *Curley* v. *Vill. of Suffern*, 268 F.3d 65, 69-70 (2d Cir. 2001) (officers had probable cause to arrest plaintiff bar owner for third-degree assault, even though plaintiff alleged that he had tried to break up bar fight involving unruly patron, where unruly patron alleged that plaintiff assaulted him). After all, "[a] story is never a single chapter, it is the experience of the entire tale; the same is true of probable cause." *Stansbury* v. *Wertman*, 721 F.3d 84, 93 (2d Cir. 2013). And although parts of the story before Officer Francis appeared to establish that King attacked Iocovello, other parts suggested that both men had attacked each other.

Iocovello's final argument springs from his second: He maintains that Officer Francis "ignor[ed] plainly exculpatory evidence." (Pl. Opp. 8). Certainly, "an officer" who wishes to avail herself of qualified immunity "may not disregard plainly exculpatory evidence." *Panetta*, 460 F.3d at 395. But there is no indication that Officer Francis did so. Officer Francis heard two accounts of

17

what transpired between Iocovello and King:  (i) King attacked Iocovello (the account that Iocovello, Alvarado, Gazzola, Gerri, and Fiore proffered); and (ii) King and Iocovello fought each other (King's take).  Iocovello appears to claim that this first account was "exculpatory."  Officer Francis, however, did not ignore that account:  She arrested King.  The information she learned from her on-the-scene interviews established that *two* DSNY sanitation workers fought each other.  She determined that there was probable cause to arrest both of them.  That was objectively reasonable.

One last point on this score:  Although Iocovello does not cite the King Affidavit in his summary judgment papers, the Court has nonetheless reviewed the affidavit and concludes that it does not change the Court's probable-cause calculus.  Putting aside the suspicious timing of the affidavit, none of the information therein mitigates the Court's conclusion that Officer Francis had arguable probable cause to arrest Iocovello.  In his affidavit, King avers, "To the best of my recollection, I did not tell the police officers that Mr. Iocovello intentionally hit me or attacked me." (King Aff. ¶ 6).  But that just gives ice to winter.  The King Affidavit is not inconsistent with the (undisputed) account that King relayed to Officer Francis on April 8 — that King and Iocovello both fought each other.  Nor does the King Affidavit suggest that King told Officer Francis that Iocovello was the *victim* of the altercation at Bronx Garage 9.

In sum, the undisputed facts of this case establish that it was objectively reasonable for Officer Francis to conclude that probable cause existed to arrest Iocovello, and that she is thus entitled to qualified immunity.  Summary

18

judgment is therefore warranted as to Iocovello's false-arrest claims under state and federal law.[4]

### 2. The Court Declines to Exercise Jurisdiction over Iocovello's State-Law Negligence Claim

Iocovello's only remaining claim is that the City negligently hired, retained, and supervised Iocovello. That claim arises under New York state law, and the Court declines to exercise jurisdiction over it.

Under 28 U.S.C. § 1367(c)(3), a district court has discretion to "decline to exercise supplemental jurisdiction over" pendent state-law claims "if ... the district court has dismissed all claims over which it has original jurisdiction." *United Mine Workers of America* v. *Gibbs*, 383 U.S. 715 (1966), teaches that "[o]nce a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of [i] judicial economy, [ii] convenience, [iii] fairness, and [iv] comity,' in deciding whether to exercise jurisdiction." *Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 (1988)); *see Gibbs*, 383 U.S. at 726-27; *cf. Benjamin* v. *N.Y. City Dep't of Health*, 144 F. App'x 140, 142 (2d Cir. 2005) (summary order) ("In assessing whether § 1367(c)(3) discretion has been

---

[4]     *See Jenkins* v. *City of N.Y.*, 478 F.3d 76, 86–87 (2d Cir. 2007) (internal footnotes omitted):

> "Qualified immunity" protects an official from liability under federal causes of action but is not generally understood to protect officials from claims based on state law. Nevertheless, a similar doctrine exists under New York common-law. If the detective defendants were entitled to qualified immunity under federal law, summary judgment would be similarly appropriate on Jenkins' state law false arrest claim.

appropriately exercised, this Court looks mainly to whether a District Court reached unsettled issues of state law and to whether disposition was supported by *significant* considerations of judicial economy." (emphasis added)).  Those factors generally tilt toward dismissing state-law claims:  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine … will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Cohill*, 484 U.S. at 350 n.7; *see also Motorola Credit Corp.* v. *Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) ("[O]ur Court has held, as a general proposition, that 'if [all] federal claims are dismissed *before trial* …, the state claims should be dismissed as well.'" (emphasis in original) (quoting *Castellano* v. *Bd. of Trustees,* 937 F.2d 752, 758 (2d Cir. 1991)); *see generally Kroshnyi* v. *U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (collecting cases).

Such is the case here.  None of the *Gibbs* factors suggests that exercising pendent jurisdiction over Iocovello's negligence claim is appropriate.  Judicial economy counsels in favor of dismissal, given the narrowness of Iocovello's negligence claim and the thin record in this case.  *See Chenensky* v. *N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013).  For similar reasons, combined with the fact that the parties in this case are all from New York, the Court perceives nothing notably inconvenient about requiring Iocovello to litigate this claim in state court.  Just so for fairness, because the Court cannot see how "declining jurisdiction [would] prejudice the parties."  *Id.*  And the comity interests here militate strongly in favor of dismissal.  Iocovello's

20

negligence claim raises a basic issue of state law, one which pits a municipal employee against a municipal entity.  Put simply, Iocovello's negligence "claim[] solely sound[s] in state law."  *Baptiste* v. *W Hotel*, No. 04 Civ. 5544 (DLC), 2005 WL 1020779, at *5 (S.D.N.Y. Apr. 27, 2005).  It belongs in state court.

"When the balance of [the *Gibbs*] factors indicates that a case properly belongs in state court, … the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."  *Cohill*, 484 U.S. at 350.  Iocovello's negligence claim against the City is accordingly dismissed for want of jurisdiction, and without prejudice.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED IN PART.  Iocovello's false-arrest claims are DISMISSED WITH PREJUDICE, and his negligence claim is DISMISSED WITHOUT PREJUDICE to permit refiling in state court.  The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.


        SO ORDERED.

Dated:        December 13, 2016
              New York, New York

                                        _____
                                        KATHERINE POLK FAILLA
                                        United States District Judge

21